**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT CLARK,** | : | **CIVIL ACTION** |
| ***Plaintiff,*** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ANTONIO ORIGLIO, INC.** | : | |
| **d/b/a/ ORIGILIO BEVERAGE,** | : | |
| ***Defendant.*** | : | **NO. 25-1515** |

**MEMORANDUM**

**KENNEY, J.** **October 16, 2026**

Defendant Antonio Origlio, Inc. d/b/a Origlio Beverage (the "Defendant") moves for summary judgment as to Plaintiff Robert Clark's (the "Plaintiff's") claims for violations of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Philadelphia Fair Practices Ordinance (the "Defendant's Motion") (ECF No. 44). For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment with respect to all of Plaintiff's claims. "[D]isability discrimination . . . laws are shields against discrimination, not get-out-of-discipline-free cards[.]" *Hileman v. W. Penn Allegheny Health Sys. Inc.*, 182 F.4th 283, 285 (3d Cir. 2026).

## I. BACKGROUND

Plaintiff Robert Clark filed an Amended Complaint (the "Complaint") (ECF No. 31) against Defendant on February 25, 2026. The Complaint sets forth claims for violations of Plaintiff's rights under: (1) the American with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101. et seq.; (2) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000d. et seq.; (3) Section 1981 of the Civil Rights Act of 1866 ("§ 1981"), 42 U.S.C. § 1981; and (4) the Philadelphia Fair Practices Ordinance (the "PFPO"), Phila. Code § 9-1101, et seq. (ECF No. 31).

Plaintiff "self-identifies as a black (African-American) male." ECF No. 44-2 ¶ 1. Plaintiff was hired by Defendant in February 2019 and began working as a commercial truck driver for Defendant in May 2019. *Id.* ¶¶ 2–3. Defendant conducts random drug tests pursuant to its Drug and Alcohol Policy/Procedure. ECF No. 48-14. The policy prohibits use of alcohol and illegal drugs in the workplace, as "[d]rug and alcohol abuse impair the user's judgment . . . as well as the user's physiological functions . . . These deficiencies can result in severe accidents or serious injury to the employee and to innocent bystanders and can also cause damage to property resulting in loss of production, business, and capital to the Company." *Id.* To administer these random drug tests to its employees, Defendant uses a third-party company called SecureResults. ECF No. 44-2 ¶ 5. Defendant does not select which drivers are subject to the random drug tests. *Id.* ¶ 6.

The facts underlying Plaintiff's claims arise from a series of events on or about August 12, 2024, when Plaintiff was selected for a random drug test. ECF No. 31 ¶¶ 20–23. On or about August 12, 2024, Plaintiff was selected for and completed the drug test. ECF No. 44-2 ¶¶ 11–14. After being notified that he was selected for the drug test, Plaintiff disclosed his prescription for Oxycodone. ECF No. 31 ¶ 22. Plaintiff was prescribed Oxycodone in late 2020 following an off-duty car accident. ECF No. 44-2 ¶¶ 7–10. Plaintiff did not disclose the prescription until he received notice of his selection for a random drug test. ECF No. 31 ¶ 22. Later that same day, Plaintiff was suspended from his employment with Defendant, and he was terminated from his employment shortly thereafter. *Id.* ¶¶ 23, 26.

Plaintiff now alleges that he was terminated on account of his disability and race in violation of the ADA, Title VII, § 1981, and the PFPO. *Id.* ¶¶ 28–29. On May 7, 2026, Defendant moved for summary judgment as to all of Plaintiff's claims. ECF No. 44. On May 21, 2026, Plaintiff filed his response in opposition to Defendant's Motion for Summary Judgment. ECF No.

48. On June 8, 2026, Defendant filed a reply in support of its Motion for Summary Judgement. ECF No. 52. The Motion is now ripe for adjudication.

## II. **LEGAL STANDARD**

When deciding a motion for summary judgment, the Court's role is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As relevant here, a fact is "material" if it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Courts must view the record "in the light most favorable to the nonmoving party." *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020). However, "[s]peculation and conclusory allegations" are insufficient to defeat a summary judgment motion. *Id.* (alteration in original) (citation omitted). Ultimately, only disputes based on which a "reasonable jury could return a verdict for the nonmoving party" can support the denial of a motion for summary judgment. *Id.* (citation omitted).

## III. **DISCUSSION**

Plaintiff asserts three theories of discrimination under the ADA, Title VII, § 1981, and the PFPO: (1) that Plaintiff received disparate treatment due to his disability, applicable under the ADA and the PFPO; (2) that Defendant failed to accommodate Plaintiff's disability, applicable

under the ADA; and (3) that Plaintiff received disparate treatment due to his race, applicable under Title VII, § 1981, and the PFPO. [1] The Court will address each of these theories in turn.

**A. Disparate Treatment Related to Plaintiff's Disability**

1. Burden Shifting

Disability discrimination claims alleging disparate treatment based upon circumstantial evidence are reviewed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *Jaiyeola v. Chemours Co.*, No. CV 25-3193, 2026 WL 2517539, at *1–2 (3d Cir. Aug. 26, 2026); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Ahern*, 183 F. Supp. 3d at 668. The *McDonnell Douglas* framework first requires the plaintiff to show a *prima facie* case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. To establish a *prima facie case* for disability discrimination, Plaintiff must show: (1) he has a disability within the meaning of the ADA; (2) he is otherwise qualified for the job with or without reasonable accommodation; and (3) he was subject to an adverse employment action as a result of discrimination. *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (citation omitted).

[1] The standards for establishing disability discrimination claims under the ADA and PFPO are coextensive. *See e.g.*, *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016) ("For purposes of assessing claims such as the ones presented herein, Title VII, the PHRA, and the PFPO have been interpreted in a similar fashion." (citations omitted)); *Sryfi v. Trs. of Univ. of Pa.*, No. CV 24-567, 2025 WL 590337, at *3 (E.D. Pa. Feb. 24, 2025) ("Courts have generally interpreted analogous claims under [the ADA and PPFO] coextensively." (collecting cases)). As are the standards for establishing race discrimination claims under Title VII, § 1981, and the PFPO. *See, e.g.*, *Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp. 2d 373, 376 n.3 (E.D. Pa. 2000) ("Because Title VII, § 1981, and PFPO address similar substantive issues, and because claims under those statutes are analyzed in the same manner, we will limit our discussion to Title VII issues."); *Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 557, 593 (E.D. Pa. 2020) ("Courts apply the same burden-shifting framework to discrimination claims asserted under Title VII, the PHRA, PFPO, § 1981, and § 1983." (collecting cases)). The Court, therefore, will evaluate in tandem the claims made under the various statutes for each theory of discrimination.

If the *prima facie* case is met, the burden "shifts" to the defendant to show that they had a "legitimate, nondiscriminatory" reason for their challenged action. *McDonnell Douglas Corp.*, 411 U.S. at 803; *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (citation omitted). Finally, if the defendant presents a legitimate, non-discriminatory reason for their action, the burden shifts back to the plaintiff to show by a preponderance of the evidence that defendant's reason is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804–05.

In this case, viewing the facts in the light most favorable to Plaintiff, Plaintiff has not made an initial *prima facie* case that he was discriminated against due to a disability. Plaintiff fails to show that he was otherwise qualified for employment and that he was subject to an adverse employment action *because of* his disability.

*a. Disability Within the Meaning of the ADA*

The ADA has a specific definition of disability: "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). As Plaintiff outlines, the Third Circuit has recently emphasized that Courts should not impose overly restrictive disability coverage, particularly in regard to back pain. *See Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 217–23 (3d Cir. 2024). The Court, therefore, does not find that Plaintiff fails to meet this standard as a matter of law. Still, Plaintiff must show that he was otherwise qualified for his position with Defendant and that he was subject to an adverse

employment action, his termination, as a result of his disability. *Shaner*, 204 F.3d at 500 (citation omitted).

*b. Otherwise Qualified for Employment*

Most notable to the Court is that Plaintiff cannot show that he was otherwise qualified for his role as a commercial truck driver while prescribed Oxycodone. *See* ECF No. 48-14; ECF No. 44-1. For Plaintiff to show that he is an otherwise qualified individual, he must show that he satisfies "the prerequisites for the positions," and that he is able to "perform the essential functions of the positions held or desired, with or without reasonable accommodation." *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 415 (3d Cir. 2017) (citation omitted). Accordingly, an employer is permitted to apply physical qualification standards to its employees as prescribed by federal regulation. *Albertson's, Inc. v. Kirkinburg*, 527 U.S. 555, 573 (1999) ("When Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law."); *see also Coleman v. Keystone Freight Corp.*, 142 F. App'x 83, 87 (3d Cir. 2005); *Jackson v. Se. Pa. Transp. Auth.*, No. CV 19-760, 2021 WL 3471163, at *5 (E.D. Pa. Aug. 6, 2021); *Clark v. Se. Pa. Trans. Auth.*, No. CV 06-4497, 2008 WL 219223, at *9 (E.D. Pa. Jan. 25, 2008). The Court has held as such in order to maintain safety and the public health. *Doe v. Cty. of Centre*, 242 F.3d 437, 447 (3d Cir. 2001) (holding that "the ADA recognizes that the goal of ending disability discrimination must be balanced against the health and safety risks that disabilities sometimes pose to others.") (citing *Bragdon v. Abbott*, 524 U.S. 624, 648–49 (1998)); *see also* 28 C.F.R. Pt. 35, App. A.

Defendant maintained a Drug and Alcohol Policy consistent with Department of Transportation Regulations, which stated that any employee "taking drugs prescribed by a physician, dentist, or other licensed practitioner which may affect your ability to safely perform

your job . . . must obtain a written statement from your attending physician. This statement must specify any work restrictions and is to be given to the Human Resources Department ***prior to your starting work under the influence of this drug(s)***." ECF No. 44-1 at 16 (emphasis added). Plaintiff argues that Defendant has not identified a "Medical Examiner determination that Plaintiff was medically unqualified . . . [or] any medical determination that Plaintiff's prescribed medication impeded his ability to safely operate a commercial vehicle." ECF No. 48-1 at 13–14. However, Defendant's policy makes clear that it was Plaintiff's responsibility to disclose the prescription and to provide Defendant with a physician's statement *prior* to starting as a commercial truck driver. ECF No. 44-1 at 16. Plaintiff admits that he did not disclose his Oxycodone prescription until after he was selected for a random drug test. ECF No. 31 ¶ 22. At no time did Plaintiff provide Defendant with a written statement from his physician indicating that he can safely operate a commercial truck while taking Oxycodone. ECF No. 44-1 at 17.

It is clear from the facts, as stipulated, that Plaintiff was not otherwise qualified for his position. *See Coleman*, 142 F. App'x at 85 n.3 (explaining that a motion for summary judgment was properly granted in a similar case involving a commercial truck driver taking medication which could cause fatigue because "DOT regulations prohibit a driver from being on duty while under the influence of certain categories of drugs in addition to any other substance . . . which 'renders the driver incapable of safely operating a motor vehicle.' 49 C.F.R. § 392.4(4) (2005). Other regulations prohibit a driver from operating a commercial vehicle 'while the driver's ability or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, to make unsafe for him to begin or continue to operate the commercial motor vehicle.' U.S. Dept. of Fed. Motor Carrier Safety Admin., 49 C.F.R. § 392.3 (2005)"); *Clark*, 2008 WL 219223,

at *9 (granting summary judgment when Plaintiff did not actively provide sufficient evidence that he was qualified for his job given his prescription status).

*c. Subject to Termination Because of Disability*

Relatedly, Plaintiff cannot establish that he was subject to termination because of his known or perceived disability. Plaintiff recognizes that he did not notify his employer that he was in a car accident or that he suffered injuries from the car accident. ECF No. 44-2 ¶ 8. Even though he eventually disclosed his prescription, he did not provide Defendant with any information as to why he was prescribed Oxycodone or inform Defendant that he was given the prescription because of his disability. ECF No. 31 ¶ 22–24; *see Hileman*, 182 F.4th at 287–88 (finding that for an employer to be liable for failure to accommodate, the plaintiff-employee must "show that her employer knew that she needed a reasonable accommodation" and holding that the employer was not liable because the Plaintiff "***waited until the last possible moment***, on the brink of being fired, to raise any work-related concerns. . . as [t]hat timing is weighty" (emphasis added)). There is, likewise, no evidence that Defendant had any knowledge of Plaintiff's disability. *Id.*; *see also* ECF No. 44-1 at 19. Because Plaintiff presents no evidence that Defendant had any knowledge of Plaintiff's disability or of the circumstances which resulted in Plaintiff's back pain, he cannot prove that such knowledge resulted in his termination. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002); *see also Hileman*, 182 F.4th at 287–88.[2]

[2] Instead, the evidence establishes that Defendant terminated Plaintiff because he violated the company's Drug and Alcohol policy. *See* ECF No. 44-1 at 16. Plaintiff's arguments conflate Defendant having knowledge of Plaintiff's *prescription* with Defendant having knowledge of Plaintiff's *disability*. *See* ECF No. 48-1 at 17. However, there is a key distinction: Defendant is fully permitted under the company's own policies and relevant Department of Transportation regulations to terminate an employee based on their undisclosed use of prescription medication. *See Coleman*, 142 F. App'x at 87, 85 n.3.

Likewise, the Court finds that Plaintiff's comparators also do not prove that he was subject to termination because of his disability. To be a proper comparator, "a plaintiff must show that there is someone who is directly comparable to [him] in all material respects." *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). Plaintiff cannot use as a comparator an employee who, in seeking assistance with addiction, affirmatively disclosed drug or alcohol usage to Defendant. *See* ECF No. 44-1 at 21–22. Indeed, Defendant offers addiction assistance to employees who proactively disclose addiction, but this program is not available to employees who only disclose following a drug test. *Id.* Employees who participated in this program, therefore, are not suitable comparators because there are material factual differences between Plaintiff's situation and that of the employees participating in the addiction assistance program. *See In re Tribuna Media Co.*, 902 F.3d at 403–04.

Plaintiff also points to other comparators whose infractions are wholly unrelated to Plaintiff's violation of the Drug and Alcohol Policy. ECF No. 44-1 at 22 ("Mr. Clark testified that he believed D.V.D. received a driving under the influence ("DUI") citation while off-duty; that S.A. struck something with his truck and was given a last chance agreement; and L. LNU was 'freaking out on the warehouse, leaving the job, running through the store, doing what he wanted' and '[t]hat's what got him fired 'cause he left the warehouse'") (internal citation omitted.) Plaintiff cannot identify another commercial truck driver, who disclosed prescription drug use after being selected for a drug test, who was treated more favorably. *See In re Tribune Media Co.*, 902 F.3d at 403–04 (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

Therefore, Plaintiff's arguments fail to establish a *prima facie* case of disability discrimination. Because the Court has found that Plaintiff has not met the requirements to establish

a *prima facie* case as a matter of law, the Court will not evaluate the subsequent steps in the *McDonnell Douglas* burden shifting framework.

2. Direct Evidence

In opposition to Defendant's Motion, Plaintiff alleges that he can prove disparate treatment via direct evidence of discrimination, a very demanding standard. ECF No. 48-1 at 9–10. Direct evidence must rise to the level that it is "so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production." *Buchsbaum v. Univ. Physicans Plan*, 55 F. App'x 40, 45 (3d Cir. 2002) (quoting *Anderson*, 621 F.3d at 269 ). To meet this standard, Plaintiffs must further show that evidence is "connected to the decision being challenged by the plaintiff." *Wright v. Providence Care Ctr.*, 822 F. App'x 85, 90 (3d Cir. 2020) (quoting *Anderson*, 621 F.3d at 269). The Third Circuit has emphasized the high standard of proof required for "direct evidence" as a "high hurdle." *Id.* (citation omitted).

The evidence that Plaintiff points to in Ms. Jacobs' testimony clearly does not overcome the required "high hurdle." *Id.* (citation omitted); *see also* ECF 48-1 at 10. The testimony of Ms. Jacobs, as Plaintiff describes it, "tied the adverse action directly to Plaintiff's prescription and perceived safety risk." ECF No. 48-1 at 10. As explained *supra* at 8, Plaintiff is conflating a decision based on his back pain with a decision based on his prescription use. While Plaintiff is arguing that he is using a prescription drug as a result of his alleged disability, Plaintiff's use of Oxycodone is not *itself* the alleged disability. Ms. Jacobs' testimony referred to Plaintiff's prescription use, but none of the testimony Plaintiff points to mentions Plaintiff's back injury. *Id.* Instead, Ms. Jacobs' testimony reflects Defendant's position: that Plaintiff was terminated because he was not qualified for his position as a commercial truck driver while taking prescribed oxycodone because he did not inform Defendant of his prescription or provide a physician's note

indicating that he could perform the required duties without risk to public health and safety. *See* ECF No. 52 at 9.

**B. Failure to Accommodate Plaintiff's Disability**

In addition to alleging disability discrimination through disparate treatment, Plaintiff also puts forth a failure to accommodate theory. ECF No. 31 at ¶ 33 (alleging that "it was a very reasonable accommodation to permit Plaintiff to take medications prescribed lawfully") To establish that Defendant failed to accommodate Plaintiff's disability, Plaintiff is required to show that: "(1) the employer knew about the employee's disability; (2) the employee asked for an accommodation or assistance; (3) the employer did not make a good-faith effort to accommodate the employee; and (4) the employee could have been accommodated." *Arana v. Temple Univ. Health Sys.*, 776 F. App'x 66, 71 (3d Cir. 2019) (citation omitted).

As discussed *supra* at 8–10, the evidence establishes that Defendant was not aware of Plaintiff's disability, even after being notified of his prescription use, because the evidence does not show that Plaintiff disclosed the reason for his prescription at any point. ECF No. 44-1 at 13–14. Further, Plaintiff did not ask Defendant to be accommodated. *Id.* at 22–23. The basis of this requirement is to ensure that employers have notice of requested accommodations. *See Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) (finding that "either by direct communication or other appropriate means, the employee 'must make clear that the [he/she] wants assistance for his or her disability.'" (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000))). Plaintiff acknowledges that he did not request a change in assignment or job due to his back pain, nor did he notify anyone of his prior car accident that resulted in his back pain. ECF No. 44-1 at 28–29; *see also* ECF No. 44-2 ¶ 8. Instead, in the Complaint, Plaintiff proposes that his sought after accommodation would be to use his prescription medication, as he had been doing

without Defendant's knowledge. *See* ECF No. 31 at ¶ 33. However, the whole basis of this action is that Plaintiff did not disclose his prescription opioid use to Defendant until following the drug test, thus also defeating Plaintiff's claim that he sought an accommodation. Defendant did not have notice, as required for employers to provide reasonable accommodations, because of the same conduct of concealing his prescription which led to his termination. *See Jones*, 214 F.3d at 408; *see also* ECF No. 44-1 at 28–29.

Relatedly, Plaintiff's requested accommodation demonstrates that there was no way for Defendant to have provided such an accommodation, as relevant to the fourth factor required for a failure to accommodate theory. *See Arana*, 776 F. App'x at 71. In fact, the accommodation sought is precisely what disqualifies Plaintiff from his employment, given that he did not provide a note from his physician that it was safe for him to drive while prescribed Oxycodone. ECF No. 31 at ¶ 33; *see also* ECF No. 44-2 ¶ 8. Without (1) informing Defendant of his prescription; and (2) providing a physician's note, there was no way for Plaintiff to be accommodated. *See Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 234 (3d Cir. 2000) (noting that the ADA was "not intended to punish employers . . . if, in fact, no accommodation for the employee's disability could reasonably have been made." (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999))). Plaintiff, therefore, cannot as a matter of law establish the necessary elements to state a failure to accommodate discrimination claim.

**C. Disparate Treatment Related to Plaintiff's Race**

Lastly, the Court evaluates Plaintiff's claim that he faced disparate treatment related to his race. Race discrimination claims for disparate treatment are also evaluated under the *McDonnell Douglas* burden-shifting framework described *supra* at 4–5. *McDonnell Douglas Corp.*, 411 U.S. at 802. Here again, the Court finds that as a matter of law, Plaintiff has not stated a *prima facie*

claim for race discrimination. To establish a *prima facie* case for race discrimination, a Plaintiff must show "(1) 'that he is a member of a protected class,' (2) 'that he is qualified for the position,' and (3) 'that he suffered an adverse employment action' (4) 'under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class.'" *Lynn v. Bank of N.Y. Mellon*, 180 F.4th 133, 140 (3d Cir. 2026) (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999)). For the same reasons described *supra* at 6–8, Plaintiff has not shown that he is otherwise qualified for the position from which he was terminated.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion (ECF No. 44) as to Plaintiff's claims under the ADA, Title VII, § 1981, and the PFPO. Plaintiff cannot establish the requisite *prima facie* for disability discrimination or race discrimination. Plaintiff further cannot establish that Defendant failed to accommodate his disability. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**